Christopher Stender, I'm here for the petitioner. Good afternoon. This case involves a question of exceptional importance. Is a condition for aggravated driving under the influence with a suspended license, in violation of Arizona Revised Statute Section 28-1383A1, a crime involving moral turpitude, when neither a DUI standing alone nor driving with a suspended license standing alone constitute crimes involving moral turpitude? Counsel, I'm pretty attracted to your argument, because drunk driving sounds to me like a crime, a dangerous crime, but not base or depraved. However, the BIA says otherwise in Lopez Mesa, and it's an en banc decision. And I'm wondering why under Aguirre and Chevron, if we say tomato and they say tomato, we don't have to go with tomato. I suppose our strongest rebuttal to that is... Is this a case about vegetables? It's about alcohol, I believe. Nonetheless, I think our strongest rebuttal to that is the fact that the BIA has no particular expertise in its evaluation of the Arizona state statutes. And that is what they're doing in this particular case. That's certainly true, but the Supreme Court keeps batting us down when we don't give them deference in interpreting the federal statute for when they can deport somebody. That's what I'm worried about. The problem is that the term moral turpitude is not a state law term. So it's not whether the board is familiar with or has expertise in state law doesn't matter. The term is a federal term, and why doesn't the board have not only the expertise, but also the authority to pursue those terms under Aguirre and Chevron? Well, this court most recently in two decisions in 2008 declined to give the Board of Immigration Appeals deference in its interpretation of state law. Every case cited in the government supplemental brief in every circuit, even the BIA... Why is this an interpretation of state law? Everybody seems to agree what the state law means. There doesn't seem to be an issue at this point as to what the state law means. The question is whether... And I gather that some of the courts have an intermediate position, which is that we defer to their CIMT definition if there is one, and we defer to their... We don't defer to the construction of state law, but we do defer to their application of the definition. So why... Does that make sense? I don't understand what's in dispute about the definition of the state law. Well, we would agree. I don't think there is any dispute. The Arizona Supreme Court itself interpreted the statute, and I think the board should defer to the state court's interpretation to its own statute. The Arizona Supreme Court said that this particular offense, this conviction, does not implicate moral turpitude. It's been stated in two separate decisions. Do we know why his license was suspended? Does the record indicate why? I believe it was because of a prior DUI offense. Suppose his license had been suspended under Arizona law because he had a prior vehicular homicide, which is the grounds for revocation in Arizona. Would that make a difference? No, I don't think it makes any difference whatsoever why his license is suspended. The suspension is completely a regulatory offense. Now, the Arizona Supreme Court... No, the suspension... You can have your license suspended or revoked in Arizona for any number of reasons, including having been convicted of a vehicular homicide. Correct, but... Why isn't that... If your license has then been revoked on that basis and you then drive, why isn't that a morally turpitudinous thing to do? I think it's immaterial because the aggravated DUI statute in Arizona requires the suspension, period. It doesn't say that if that suspension is for some other ground, that it implicates some other section of law or is turpitudinous... Well, couldn't the statute then be divisible? If your license is revoked because you've committed a vehicular homicide, that's one thing. If it's revoked because you didn't pay child support or you didn't have evidence of insurance, that's a different thing. Well, this Court has said it is a divisible statute in Hernandez-Martinez, and it declined to find whether or not the conviction involves moral turpitude or not. Why shouldn't we use that analysis here, this divisibility, figure out why the license was suspended or revoked, and then see where we are? Because the Court cannot go to the specific conduct that's engaged. This Court has said repeatedly, and the Board also said, that you must look to the elements of the statute in determining whether or not a particular crime involves moral turpitude or not. The actual conduct is irrelevant. Is that true? Easterbrook says otherwise in Ali v. McCasey. I'm sorry? Chief Judge Easterbrook in the Seventh Circuit in Ali v. McCasey says that decision is up to the Board, figuring out what the actual facts were. It's up to the Board and the IJ. It's not really something that we can constrain or should constrain. Well, we did cover it in our brief, and I do have it later in my oral argument, but there is a long line of cases, and I think the Board also agrees, and it does agree in its published decisions, that the Court should look to the elements of the statute in determining whether or not moral turpitude is implicated, not to the underlying conduct. Doesn't the statute, I don't want to mention this, but the Arizona statute says at the end, as a result of violating Sections 28-381 or 28-382 or 28-1385, what are those? Are those all drunk driving offenses? I mean, if I read the Arizona statute, it may be that it only pertains to suspensions because of drunk driving. Is that not right? Well, there's three aggravated DUI statutes in Arizona, two of which there are published Board decisions on. One is... I'm not talking about that. I'm talking about this statute, and the fact that the reference to driving on a suspended, cancelled, revoked, or refused license has a corollary as a result of violating certain sections of the Arizona Vehicle Code, apparently. Well, 1381 is three DUIs within five years, I believe. Okay. And 1382 is driving on the suspended license, so that could be actually reversed. 1385 may be driving intoxicated while there's a minor, 15 years or longer. So, basically, it has to be suspended because of a DUI offense in order to come under this section, in answer to Judge Silverman's or somebody else's question. It may be. I don't know. I can't speak to that exactly. I'd have to reread the sections. I think it's any suspension because the fact of the matter is, you may never have had a driver's license before, and you could be convicted in Arizona of aggravated DUI with a first-time DUI conviction if the state would show that you never had a driver's license. No, that's not true. It has to be suspended, cancelled, revoked, or refused. You simply never have applied. That doesn't count. You know, which raises an ambiguity in the record. Do you have the record on you? I have it here on my table. Okay. If you go and look at page 126, 127, there seems to be evidence that petitioners have a suspended license, but then if you go to page 147 of the record, he says, no, he never had a license to begin with. Are you with me? I'm sorry. I gave you 126 to begin with. If you look at line, on page 126 of the record, page 126, line 15, page 18, the suggestion there by Mr. Jacobs, who I gather is his lawyer, is that he has a suspended license. And then if you go to 147, he's asked, Mr. Campos, did you have a valid driver's license at any time in Arizona? Answer, I never had one. That's line 11, page 147. Correct. Do we know whether he ever had a license? Well, as I stated earlier, I believe that it's not necessary to ever have a license in Arizona to be convicted of the aggravated DUI. That's just wrong. I understand that's your position, but that's not what I was asking. I was asking, what do we do with these? The IJ seems to, in this case, have found, implicitly at least, that this was a situation where he had a suspended license. And I can't tell whether you challenged that before the board, and I can't tell whether you challenged that in finding before us. So do we assume, do we take it he had a suspended license, or that he never did have a license? How do we proceed on that factual issue? Well, I'm not, I think by the terms of the statute, as the court has already pointed out, that there is a showing that the state must show that the person's driver's license or privilege to drive is suspended, canceled, revoked, or refused. And to be convicted of that offense, they must have shown that. So you're accepting that by being convicted of an offense, there must have been a determination by the state court that one of those four situations was met. It was suspended, revoked, refused. Right. That one of those things must have been the case. So as far as we are concerned, that is the state of the record. Yes, I believe it is. Counsel, I'm concerned about the standard of review, and I share Chief Judge Kaczynski's interest in the Ali case out of the Seventh Circuit, Judge Easterbrook, Chief Judge Easterbrook. And I assume your argument is premised on the fact, or at least the assertion, that the Ninth Circuit standard of review in this setting is de novo. Is that the basis upon which you're proceeding? Yes, it is de novo. Romero-Lopez, Nikanor, Placentius, Ayala, those cases? Yes. Why the government squarely raises the question of whether we should continue to be the outsider while every other circuit that has decided the standard of review in this case takes the deferential Chevron standard rather than de novo? What's your response to the government's position? Well, I think it's somewhat misleading because when you look at the circuit court decisions, they all say the same thing. They say if the BIA is interpreting the Immigration Nationality Act, crimes involving moral turpitudes, AMTs, for example, then we defer to the BIA. If they're interpreting the elements of a state statute, then we don't defer to them and we review de novo. In this case, are you conceivable that we should follow the rule that since CIMT is in the INA, in the Immigration Nationality Act, that is within the Chevron deference of the agency? Yes. I would concur that it is. It is up to the BIA to state what is or is not a CIMT. They make that determination and under Chevron we defer because it is within the language of their statute, in which case our review is very minimal, is it not? It's an appealing argument and the government comes strong with that, but it's a misleading argument because if you go through and review what this court has said, and even disregarding that the Ninth Circuit has repeatedly said we're not going to be deferential to the BIA in this type of case, the other circuits also are not deferential. It's not an interpretation of the INA CIMT issue when the BIA is falling back to the elements of the state court conviction and looking at that and trying to say whether or not the elements and interpretation of the state court conviction. Suppose we did apply Chevron deference here. We have a situation, as I understand it, where in terms of the reasoning that is in the opinion, with regard to why this is a CIMT, it seems to be at least arguably in conflict with other cases of the board itself. For example, that you can't take two non-CMATs and turn them into a CIMT. So why isn't that a reason for not applying Chevron? There's no coherence here. And applying it, but concluding that it's not reasonable. Exactly. I mean, the dissent in our case clearly points out that the BIA is not following its own precedent, let alone the Ninth Circuit precedent in making the determination. In fact, it seems to be contradictory. Also, this court would have to overrule several decisions. Why don't you explain to me what it is that's contradictory? The board has two or three precedents in point. One of them is called Lopez-Mesa, the 99 case, which is directly on point. It deals exactly with this section that you're trying to make, right? And then we have a couple of intervening cases, including Inouye Short, but skipping over them lightly, the one that seems to cause most difficulties, Torres-Varela, which deals with the next subsection of the same section, the one that says it's aggravated if you do it three times in a row. And they distinguish the first one. They say, well, we see your situation where you're doing two different bad things as different from doing the same bad thing three times in succession. So where's the inconsistency? I mean, they draw a distinction. You know, maybe we like the distinction or we don't like the distinction, but it's not like they ignore it, right? They ignore their own precedent. You can't really look short. They acknowledge it and distinguish it. They say doing the same thing three times in a row is different from doing two bad things at once. Is that irrational? It's not a distinction that the board has ever recognized, and I don't believe they came out and said that. But they did. In 2001, they did. In Torres-Varela, they recognized exactly the distinction. It's not like they said, ooh, we're not going to look at this other case. We'll ignore it. They said, well, acknowledge this case. Our case is different, and it's different based on this distinction. It's a distinction without a difference. The board never said that. The board thinks it has a difference. If I could, the board has said repeatedly also that if a offense is not a CINT, you cannot make it a CINT offense by aggregating those offenses. That's right. And that's exactly what they're doing here. I don't understand something that you just said. One thing that we traditionally look for, the sentencing guidelines look for, is to even out things according to whether the person has the kind of prosecutor that charges every crime he committed on a particular occasion or the prosecutor who just charges one of them, as opposed to an individual who commits the same crime repeatedly. I don't understand why that is a distinction without a difference. Well, because the board has already said in Torres Varela that it doesn't make a difference. You can be convicted three, five, ten times in DUI, and it doesn't make it a CINT. And that's the published decision. Then they're going to go on in the next in Lopez-Mason and say, here's two non-CINT offenses, and we're going to combine them together, and we're going to make it a CINT. But isn't that the prerogative of the board? Isn't that what Chevron is all about? They're interpreting their own statute, and they make this distinction between these two sets of facts, just like the chief judge indicated. Well, they have to follow their own precedent. Chevron deference doesn't mean we advocate to whatever they say. There has to be some reasonable basis for it, doesn't there? Correct. There has to be. So their rationale, as I understand it, is there's some knowledge element that you know that, even though they eschewed the notion that if you drive drunk three times in a row, somehow that's not knowledge, that what you're doing is criminally wrong. But if you drive with a suspended license while you're drunk one time, suddenly you've moved into reprehensible conduct. What's the rationale for that? Yeah, there is no rationale for that that I can discern, and that's why I believe the board is not following its own precedent. Why would they have to follow their own precedent? It's an en banc decision. Lopez Mesa is en banc. Because they're not overruling Torres Varela either. They just came out and said, as the court has just mentioned, the fact that you can't aggregate non-CINT offenses and all of a sudden convert it or bootstrap it into a CINT offense by aggregation. Let me give you a slightly different set of facts. Let's say they said, look, if you drive drunk, you can do it as many times as you want to, and it's not going to be a moral turpitude. But let's say you drive drunk, and while driving drunk, you're also driving in excess of 100 miles an hour. I'm not making that part up. And they say, well, driving very fast itself is not a moral turpitude. Driving drunk is not a moral turpitude. But when you combine those two things together, you are going beyond sort of prohibits, you know, moral prohibiting. You are now such a menace on the highways that the confluence of those two offenses make it as if you were pointing a gun at a crowd of people. Would that be irrational? I think you can poke along drunk. You know, if you're poking along, sort of weaving back and forth, you know, not good, not good, but it's, you know. And you can drive real fast if you're not drunk. But, boy, if you are drunk and you're driving at an incredibly excessive speed, then you're like a cannonball. Well, those facts are not presented, nor is it... Of course they're not. That's why I said I was making it up. Nonetheless, I believe it's a bit of a slippery slope because it starts to look to the facts of the case and not the elements of the offense. It would depend on what the elements of the offense were before I could respond to that. What I was testing is a theory that you can't have sort of the confluence of two things that are themselves not... that it makes no sense to take two things which in themselves are not morally tortitudinous, if I pronounce that correctly, and to say, but when you combine them, you do get something that is morally tortitudinous. Is this possible to come up with a set of facts where you say one isn't, the other isn't, but when you marry them, then you are not... now you are in the... Well, take carrying a gun. You could say, well, carrying a gun without a license is a regulatory offense. And let's say pointing a gun in public is. But if you have no license and you point a gun, then, you know, you've really sort of piled on. Isn't it possible to have that kind of... Again, it's really irrational. It's irrational if either offense standing alone do not implicate... You don't need to be that broad, do you? I mean, in other words, the characteristic of at least the second offense here is a regulatory one, driving with a suspended license. You have to have a license. He didn't have a license, but it's not an act as such. It's just a condition, so to speak. And the question is, isn't whether... I mean, it seems obvious that you could do two things together that are going to be worse than one thing that you might do, but this has a certain character, and I'm not sure why that isn't what's just positive. Well, doesn't the board itself, as I read their opinion, at least on the one refusing to lump them together, which is the Torres Varela, they say the crime must be one that necessarily involves moral turpitude without consideration of the circumstances under which the crime was, in fact, committed. And the two crimes here, as I understand it, are, although they're one offense, is that he drove for whatever reason, he didn't have a license, and he drove drunk. And their opinion has said clearly singly or in combination DUIs don't inherently constitute such an aggravated, base, vile conduct that they alone can constitute or cumulative. So there's no 100 mile an hour, there's no suspension for murder, any of that. It's just two simply non-CIMT offenses together, and I'm having trouble understanding how combined they suddenly became base and... That's the thrust of our argument. That's what the dissent clearly said, Judge Nelson. That's what the Board of Immigration Appeals itself has repeatedly stated, that we won't aggregate and make them into a CIMT if both offenses standing alone are not moral turpitudinous. And this court has also acknowledged that that is the state of the law. So whether or not Chevron or Brand X is implicated, this is not really an interpretation of the immigration rationality. And it's inaccurate to say, as I think that Grosdon suggested, that this is merely, one element is merely the absence of a license. Because as Judge Silverman pointed out, and I think you've conceded, this is not a case where the guy doesn't have a license. The guy never had a license. You actually have to have a lawful act denying you a license, either revoking, suspending, or... Canceling or refusing. Canceling or...thank you. So if he showed up and he was underage, he would have been refused a license, I guess. Well... And then drove. I'm sorry. I assume he'd have to have done something to get on the books and having his license revoked. Well, what you have is the state of Arizona, in State v. Williams, the Arizona Supreme Court stated that although there's no mens rea in the statute, that driving without a license necessarily does involve a culpable mental state. However, the Arizona Supreme Court stated that the DUI offense and that the suspended license offense are regulatory in nature. But not just an offense. It has to be something of a certain level of seriousness. They don't just deny the license because, gee, they say you've got blonde hair, or, you know, we don't like the way you look today, or anything of that sort. It's a pretty serious... You're not referring to me personally. No, certainly not. No, I mean, as we know, being denied or revoked or, you know, having a license suspended is a very serious thing. They add up points. I mean, there's a whole system, and it's a big step the state takes. So before you get to the point where you are eligible for this, for the one prong, you have to have been in some sort of legal proceeding where you have been found to have done something pretty bad vis-a-vis. Well, that's conjecture. Let me ask you this. Do we know why your client's license was suspended? I don't believe we do. And that was raised at the BIA level that the government... What occurred in Arizona at the time is after Hernandez-Martinez came out and the Ninth Circuit said, well, aggravated DUI on a suspended license is divisible, the government tried to put in evidence to show that the person who responded in those immigration deportation proceedings was in control of the vehicle and, therefore, implicated moral turpitude. And I believe there's a... And it's in the record. And I believe Judge Krasinski pointed out there is the kind of the plea colloquy and things like that trying to show the facts of what happened, that the respondent knew that his license was suspended and that he was actually in control of the vehicle. Although I take issue with whether or not the... In our brief, whether or not that was sufficient to prove. But that's why, factually, that happened. Do we know why it was actually suspended? I don't believe we do. That goes back to the question I asked you at the beginning. Why doesn't it matter whether he was... He had his license suspended because he got into an accident and didn't have his insurance card in the glove compartment or whether he had killed another human being driving an automobile and, therefore, had his license revoked and then gets out of prison and then drives drunk. Why doesn't that make a difference? It doesn't make a difference because this court in reviewing whether or not... ...is limited to the elements of the statute. So, what the court... I know, but the previous case says we can look at the language of the statute but still decide whether he was driving or whether he was in actual physical control of the vehicle. It's divisible and we can look to see which is which. Why can't we do the same thing here? Why was his license revoked? If it's revoked because he committed a vehicular homicide, that's a different kettle of fish than if it was suspended because he's delinquent in his child support. Except that would be adding elements that's not in the Arizona statute. What about the running of the red light? All we really know is he was driving under the influence. Correct. That's all the record shows. Correct. That's correct. And we've got an Arizona case that tells us that driving under the influence is not a crime involving moral turpitude. And that driving without a license or with a suspended license is not an offense that involves moral turpitude. Correct. Moral turpitude is not easy of definition. Correct. So you've got some ambiguity here. Correct. Aren't we supposed to construe these statutes? And shouldn't the BIA construe these statutes where we have this ambiguity in favor of the immigrants? The BIA has no particular expertise in construing state law. They have no expertise in construing this statute in Arizona. What they have expertise in construing is the Immigration and Nationality Act, crimes involving moral turpitude. Why does it matter what the Supreme Court of Arizona says about moral turpitude? The state of Arizona defines what the crime is. The federal statute says moral turpitude. It seems to me that it's a federal question whether under the federal statute the crime is one of moral turpitude, and Arizona can't tell Congress whether a crime is or isn't. Congress can be broader or narrower than the state of Arizona. Perhaps. I'd make two points. One, the Arizona Supreme Court, I think, certainly has more expertise in construing their own statutes than the Board of Immigration Appeals. It's not construing the statute. What Judge Feinfeld is saying is that's not a question of construing the statute. It's a question of characterizing it. My second point would be that exactly the board, even assuming that that is to be the case, the board also has to follow its own precedent, and they didn't do that in this case. They're being contradictory. They're not following their own precedent, and this court does not owe any deference to the BIA's determination. We may owe deference to it, and we may conclude that they're not reasonable, but we would still, it's still a different standard that we would apply. In other words, we wouldn't be doing a de novo at that point. Correct. But I believe it is a de novo review because it's an interpretation of Arizona state law. Am I correct in thinking that the board operates like us, in that they have to follow their own precedents in panels, but when they sit on bonk, they don't? I believe, yes. Lopez Mesa was on bonk, so I figured they didn't have to follow their own precedent in that. True, but I think they have to see if they're explicitly overruling it. I don't think that was done, and you cannot. Do we have to say that? Pardon? Do we have to say that? Can a district court ignore our on bonk decision and follow an earlier decision that conflicts with it because we didn't expressly state that we were overruling the earlier one? Well, I mean, as counsel, I suppose it could be argued that way. It would be better if I had this to point out this thing overruled. Actually, both opinion. Torres-Varela is also on bonk, so I'm not sure what we make of it. Counselor, just a quick factual point. There was reference in the record to running the red light in the second aggravated DUI. Was that part of the conviction? The question, and I suppose the related question, is did the BIA take that as a fact in weighing whether or not it was moral turpitude? In this particular case or in local? Well, there are two DUIs that the BIA relied on in your case. One was the .164 unlicensed and the other was the .233 unlicensed but also running a red light. I just wondered what was the significance of the running of the red light? I don't think there was any significance to it. I think it was an analysis of the elements of the statute, the knowing which was read into the statute by the Arizona Supreme Court, and therefore the respondent knew he shouldn't be driving that, therefore it was moral turpitude. Thank you. Thank you. We'll hear from the government. May I please the court? I'm Sue O'Brady of the Department of Justice representing the Attorney General. Many of your honors questions have anticipated the government's position in this case, and primarily the main issue we'd like to leave the court with is the importance of the Chevron issue is to implement the statute that invested the Attorney General with authority through his delegate, the Board of Immigration Appeals, to decide in the first instance which aliens are deportable or removable from the United States, and then secondly, which convictions constitute crimes involving moral turpitude within the board's interpretation. Counsel, let me tell you the main problem I have with your side of the case so you can educate me on it. On the one hand, even though I don't think drunk driving on a suspended license is base or depraved, I think it's just bad and dangerous, the BIA does, and we have more than once been reversed because we didn't defer to the BIA's interpretation of the statute under which they operate, this federal statute that says moral turpitude. However, on the other side of that, we've got this Supreme Court decision, Begay, that says the board was wrong and the courts are wrong in treating drunk driving as a crime of violence. Sure, it's real dangerous, a lot of people get killed by drunk drivers, but it's still not a crime of violence because the person doesn't mean to be violent, he's just doing something that's extremely dangerous and likely to have the same consequences as someone who intends to do something violent, but that's different. So in Begay, they overturn the board. I'm having, I'm kind of wondering whether this is like Begay, whether it's just pushing base or depraved a little too far. I think the distinction in Begay is much like that that occurred in the Leocal case some years before, and that is the element of crime of violence is a term of art within the meaning of the Immigration and Nationality Act, and it's with reference to the federal criminal statute, 18 United States Code, Section 16. And I think the court's problem in Begay and Leocal was that the crime of violence within federal law has to have an intent to injure or harm or to cause the violence. And as I understand it in Begay and Leocal, the damage or violence or whatever that occurred as a result of the person's drunk driving, it was not intended. And that somewhat goes back to the board's history of not construing simple DUIs as crimes of moral turpitude, because there seems to be a historical presumption that drunk driving doesn't involve the mens rea. Well, it looks to me from Begay as though they were not being hyper-technical. They just said DUI differs from crimes like burglary, arson, extortion, and use of explosives in a pertinent and important respect that those involve purposeful violence and aggressive conduct, and this, although it can have similar consequences, does not. It doesn't have the same purposefulness to it. It doesn't seem hyper-technical. It just seems like they're looking at these crimes in a common-sense way and seeing if they're similar or different. Well, as I say, the crime of violence is limited or prescribed, if you will, by the corresponding criminal statute, Section 16. And to the extent that that statute has been interpreted as requiring willfulness and intent purposefulness, the BIA was to follow that, and I think that's the essence of Begay, and the same in Leocal, where, as I understand it, the person while driving drunk caused serious injury to someone else. But nonetheless, the court said we can't put this into the crime of violence box, because as horrendous as it was, we can't prove the mens rea that is required for crime of violence. That's not how they put it. The way they put it is that the statute says presents a serious potential risk of physical injury to another. Yeah, drunk driving does. No problem there. But the lower courts were wrong to go off on that similar serious potential risk. They should have used the traditional statutory approach of a justem generis to see whether this is like or different from burglary, arson, extortion, and explosives. And I believe, Your Honor, that the other crimes that you cite, burglary, arson, et cetera, those are intent crimes. Counsel, I'm concerned that just on the same subject, burglary is not considered a crime involving moral turpitude. I believe there is case law to the effect, Your Honor, that there is a crime, a state statute, burglary is defined as an intent to commit a felony. And to that extent, I believe there was a 19th century... Well, we have cases that burglary is not a crime involving moral turpitude. Assault and battery is not a crime involving moral turpitude. Malicious mischief is not a crime involving moral turpitude. Alien smuggling is not a crime involving moral turpitude. An ADW, assault with a deadly weapon, is not a crime. Indecency is not a crime involving... Money laundering isn't either. Driving under the influence isn't. Driving without a valid license isn't. So how do you make sense of all this? Well, to the extent that some of those decisions do conflict with other circuit decisions... But not the BIA. The BIA itself, in its opinion, said burglary doesn't constitute a crime of moral turpitude. I believe, though, that was applied on the Taylor approach, though, to the extent that the statute, you interpret the criminal statute... I was just listing where they were, and maybe it was a concurring opinion. But here's the problem I'm having, maybe similar to Judge Kleinfeld, I'm not sure. But the concern I have is that the definition of moral turpitude is fairly general, but the BIA and we seem to coalesce more or less around the same definition of conduct that is inherently base, vile, depraved, and contrary to the private and social duties man owes to his fellow men or to society in general. Now, your opponent was asked or asserted that the Arizona Supreme Court takes the position, and the BIA itself takes the position that DUI itself is not a crime involving moral turpitude. Individually, driving without a license is not a crime involving moral turpitude. Where does the BIA look to suddenly create a combination when it has said in other cases that you don't combine and aggregate cases to come up with moral turpitude? That was the, I forget the name, short. And in DUIs itself, it has said, even though if you pile on this, if either of the two crimes is inherently risky, would be DUI, not driving without a license, it combines it in one statute and says, aha, through some form of alchemy here, we have now created something that falls into this definition. Is there any case across the country that has ever held a DUI and driving without a license to be a crime of moral turpitude, other than what the BIA has said? I haven't found, just trying to look through various statutes. I haven't either. I haven't found another statute. Even assuming we give Chevron deference, how do we defer to a BIA with all of that laundry list of obstacles that they would have to overcome for us to say, well, they said it, and we have to defer? I'm just having trouble with that. Part of the analysis the board did in Lopez Meza was to point out that the concept of crime involving moral turpitude is changes with society, if you will. And so to the extent that the board, and also the prior problem, the synergization, I think, was the dissent in Lopez Meza about combining one non-DUI with another. As Your Honor's questions anticipated earlier, first of all, nothing precludes the board from changing its mind that, yes, we can combine two non-DUIs. Well, they did. Torella's Varela is a 2001 decision. That's after the ‑‑ Torella's Varela, as I read it, Your Honor, did not involve combining. No, it was aggregating. It was aggregating because the person had, excuse me, three drunk driving offenses. But there, though, I mean, it held to, as I said, it's been its precedent, it's been its history. A simple DUI does not involve a crime of moral turpitude. Well, it does have another problem as well, which is that the only explanation I can find in Lopez, whatever it's called, is that this, because he had no license, he knew he wasn't supposed to be driving. Well, someone who's already had a DUI for driving drunk presumably knows he's not supposed to drive drunk. It's the same thing. So there's no distinction. Well, that's not exactly right, is it? Well, I mean, DUI is a general intent crime. You know it's against the law to drive drunk. But in the revoked, canceled, or refused situation, you have to know that your license has been taken away. It has that additional mens rea. It's not simply a crime to drive with your license suspended if you didn't know it was suspended. That's right. And Lopez Meza analyzed the Arizona law and pointed out that it does require, the aggravated DUI does require. But half of somebody who's already been convicted of driving drunk not know that he's not supposed to drive drunk. They don't know they're drunk. They don't think they're drunk. Well, again, though, that's why I said they're not aggregated to DUIs. The statute under which they're deciding the case had two elements, one, driving under the influence, and two, driving when you know you are not permitted to drive at all. If they're drunk, how, you know, if they're drunk and they're happy, they're not thinking about whether they have a license or not, are they? Your Honor, the way I tried to get it in my mind was they drive drunk and their license is taken away. At some point, potentially they're sober, and it's like that car is like anathema to them. They can't go near it, I think would be the most common sense analogy to it. But in any event, that was the board's judgment. Do you think it matters why the license was revoked or suspended? I don't. No, not to the extent that the idea, the concept the board was approaching was you are not supposed to be on the road at all. Suppose it was suspended because you're delinquent in child support. Excuse me. Suppose the license was suspended because you're delinquent in child support. Would that make a difference? That's not the case before us, but I think it would. I don't know why it was suspended. The record isn't clear why. Right. Okay. Let me just ask you hypothetically. Suppose his license was suspended because he's six months in arrears in child support. Well, I do agree with Mr. Sender, though, that the board can't look at the specific conduct of the individual. And it can't go beyond the elements of the statute as written. Do you mean, I have noted that the statute seemed to me to have a limitation as to the reasons for the revocation. And I'm not clear that any kind of revocation counts. Only certain ones do. Do you know anything about that or whether? No, I believe there are other incidents for which, other reasons for which your license can be suspended. Yes, but there's a list in this statute that says only if it's revoked for A, B, or C reasons. And at least two of those are drunk driving. I don't know about the third. Well, I think that's one of the additional offenses under Arizona law. No, it isn't. It's this one. Excuse me, which statute, to which statute are you referring, Your Honor? The statute says, commits a violation of 28-1381 or 28-1382 or this section, while the person's driver's license or privilege to drive is suspended, canceled, revoked, or refused, while a restriction is placed on the driver's license or privilege to drive, as a result of violating 28-1381 or 28-1382 or 28-1385, which I take to mean that it has to be revoked for one of those three reasons, not for another. Okay, Your Honor, I agree. That's correct. Well, what are those reasons? Two statutes, I believe it's called 1382, 1381. That's if you are drunk, camera impaired to any extent. Right. The second is 1380, I'm sorry, I can't remember the exact. It seems to be a limitation, and some of the questions we're asking would depend on that, what it means, because it doesn't seem that any kind of revocation counts, only certain revocations count. Within the aggravated DUI statute, Your Honor, you're correct. Do I have the distinction right between Lopez Mesa and Torres Varela? The way I read them is to apply them concretely. If a person drives to the bar sober, gets drunk, gets caught over and over again, it may not be moral turpitude under Torres Varela, because by the time he gets drunk, he doesn't know what he's doing. He doesn't necessarily have an evil intent. But if he's had his license revoked or suspended for one of the listed reasons, then he knows perfectly well when he's driving to the bar sober, he has no business driving to the bar and getting a drink at all. And it doesn't really matter that by the time he's drunk and gets back behind the wheel, he doesn't know what he's doing, because he did know what he was doing. He knew he was driving on a revoked or suspended license when he drove to the bar to drink. Is that the distinction? Is that a fair way to distinguish Torres Varela and Lopez Mesa? That is the distinction between the two cases, Your Honor. That's probably satisfactory, is it? Because if you go to the bar to have a drink and you know you've lost your license in the past or you've been punished for DUI before, you know that too when you're sober. So it's not like he wanders in there with no memory and not having a license. I mean, it seems to me it's just as bad to go in knowing you've already been punished for drunk driving as it is to go in knowing that you don't have a license. And if you go and drive without a license and you don't get drunk, and you're picked up for driving without a license, is that a crime of moral turpitude? No, it isn't, Your Honor, no. But why? Why isn't it? What if you were just, if you were knowingly driving, if you focused on the word, and the BIA focused on the word knowingly, that you're knowingly driving without a license, which just means that you've been advised that you don't have a license. You avoid incidents in which your license was suspended but you weren't told about it. So if you're driving without a license and commit any kind of a regulatory offense, run to a stop sign, run a red light or whatever, then why isn't that a crime involving moral turpitude since you have knowingly committed this offense? I think, Your Honor, because the cases are concerned that that kind of analysis would make virtually any crime, a crime involving moral turpitude, or at least one other. Well, that's the ultimate problem. That's what we want. We want to make everything morally turpitudinous. I don't. And we can get rid of a lot of people. Well, Your Honor, I will agree, frankly, that part of the context of this is that the immigration, Illegal Immigration Reform Act in 1996, that really greatly changed the Immigration Nationality Act, put stress on the fact of wanting to remove more aliens who were convicted of covert offenses. And the people that get slammed the most, overwhelmingly, are the Mexican people, right? I don't. Show us. We have the statistics. Slammed in what sense? Who are deported, Your Honor? Yeah, deported. But that could also be part of the corollary of more of them coming over into the country illegally. Well, this man here has children born here, hasn't he? Huh? Yes. He's working? I don't know that the record shows that. Is this Texas? I don't know that the record shows that. Goes to church? The record does not show that. So we don't know whether he's morally turpitudinous or not. Well, no. Loves his children? We can assume many of those things, Your Honor. But nonetheless, the board is limited to the elements of the conviction statute before them. Let's change the subject for a minute. There's a footnote to the BIA opinion, which I found interesting, which says, the respondent doesn't challenge the adequacy of the charge of removability, but they have reservations about whether the respondent is removable on their remaining charge And my understanding is that there actually is a problem there, because he wasn't admitted until after one of these DUIs and the theft offense both. And you have to have, under the section he was removed under, you have to have two CIMTs after admission. Is that much right? Yes, Your Honor. But I think the issue there was the Immigration and Naturalization Service charged him under 1227A2II with having two crimes involving moral turpitude. After admission. After admission, that's correct. And they also charged him with having committed a crime involving moral turpitude within five years of admission. But they withdrew that one. I'm sorry? But that one was withdrawn. They withdrew that one, right. And I've read that footnote as relating to that, that it remained in the record somehow, but the board finds that it's harmless error because he certainly wasn't found removable on that basis. That's the only way I've been able to make sense of that footnote. Counsel, assuming that we would be persuaded by the government that we should follow the Seventh Circuit, and all the other circuits except our own, on the standard of review and apply Chevron deference, how do we evaluate the finding that the board makes that in this particular case, these two crimes, aggravated DUI, were indeed crimes of moral turpitude? How do we go about doing that? What's the analysis we have to make? We submit that the first analysis is that they were relying on a precedential Board of Immigration Appeals decision. And even if a single-member decision is not entitled to deference, certainly a precedential decision is. While we're on that very point, suppose we look at all of these decisions and it appears to us that there's a conflict within the BIA decisions. Is that something that we should be looking at or not? Under Chevron's second step, the consistency with which the agency has taken positions can go to the reasonableness of their ultimate decision. But we don't have that here. Spell that out. Spell that out, why we don't have that here. Because we disagree with Petitioner that this decision is inconsistent with prior Board precedent. Judge Kaczynski pointed out that the other prior precedent, Lopez-Meza, was exactly on point and goes with the BIA Board of Immigration Appeals. Is that the end of the analysis or do we have to say, well, what about Torres-Varela? That doesn't seem to be consistent. Judge Kaczynski helped me there, too, if you will, with Torres-Varela by pointing out It's really distinguishable because it did not have the two elements that the Board looked at both in Lopez-Meza and this case. But do we yield to the distinction that the BIA makes or is that something we have to come back and look at and arrive at independently? If the distinction is correct, then it stands. You certainly are supposed to Do you mean by correct or rational? Two different things. If, for example You said correct. I just wanted to make sure which you meant correct or you meant rational. In the example just given, if the Board was in fact incorrect in their distinction between Lopez-Meza and Torres-Varela. Let me complicate the situation for you just a little bit because this is Thank you, Ms. Cannon. You've got intervening opinion of Imre Schwartz. You're familiar with that. So what I said earlier, I mean, it was a question and sometimes questions express views that I don't necessarily hold because I'm testing counsel. But assuming that what I said really reflects my view of the matter and you can reconcile Lopez-Meza with Torres-Varela on the basis that the court gives them. So let's accept that. What do you do with an intervening decision? I'm sorry, the prior decision of Imre Schwartz where they say moral turpitude cannot be viewed to arise from some unidentified synergism by which two offenses are combined to create a crime involving moral turpitude where each crime individually does not involve moral turpitude. Is Schwartz overruled by Lopez-Meza? Can it be reconciled? What do we do with Schwartz? Our position is that it can be reconciled because it is not the situation that was before BIA in these cases. In short, it was, I think, one non-CIMT with an even vaguer statute on, I think, an attempt to commit a felony without defining the felony. And it is true that on the Schwartz side you can't combine one non-CIMT with another and come up with two CIMTs. What were the crimes in short? You can just tell me what the guy did. I don't need to know the number of the statute. Neither assent of aiding and abetting was a CIMT. Aiding and abetting what? Aiding and abetting nor the assent of assault with intent to commit a felony. And apparently the assault involved an assault upon a minor. And the board said that independently neither of them involved moral turpitude as the law of this defense. But nonetheless, the board has to consider crimes involving moral turpitude with the statute they're given, the criminal statute they're given. And in this, Arizona had made the judgment that driving under the influence while you do not have a license is a crime. And so the question before the board was, all right, do those circumstances, do those elements of the state statute go over into base conduct? And in Lopez-Meza it did because it held that the combination, if you will, in that case, deviated further and further from the duties that we owe to one another in society. And so it is with reference both to the dangers of driving under the influence and then with... I have a hard time with that. I mean, as a logical concept I can sort of understand it. But to me, if you keep driving to that bar and sitting down while a car is parked outside and taking a drink after you've gotten convicted of drunk driving once and after you've gotten convicted of drunk driving twice and you still, you know, as you pass the bar you don't look the other way, you pull in, park the car in the parking lot and don't leave until, you know, you can't see straight in front of your face, to me, when you're talking about departing from the norms of society, to me that just strikes me as a lot worse than driving by and not having a license or having a suspended license and still going in and getting a drink. I... Well, that's certainly... I don't think I'm odd that way, but I think that may be a more common view than the others. And I appreciate the concept and it could be... And yet the board says in one case you can keep doing it, you can keep driving by the bar and getting drunk and getting drunk and getting drunk and no matter how often you do it, you haven't departed from the norms of society far enough to... But the other one is... The board has not precluded at some point from deciding that recidivist DUIs are crimes involving moral turpitude for the reasons you've given and that others have given. However, the distinction you've made here was that to date, as of the Lopez Meza decision, society had not gone to the point of a simple DUI being a crime involving moral turpitude, primarily because society seemed bent on the notion that there... Let me just skip a few... Let's say we buy into Chevron. Again, I can't even speak for myself, but I'm just... Let's assume that we are, just for the purposes of the question. And we were to look at this and say, look, we buy into Chevron, we gave grave deference to the board, but it just doesn't make any sense to us whatsoever to say that three drunk driving convictions in a row is not moral turpitude, whereas one driving conviction with a suspended license is. The one is obviously, to any rational mind, worse than the other. Would we be really tensioning on the board's authority if we said something like that? I think you would, Your Honor, for the reason that whatever the motivation for believing that one is worse than or the same as doesn't preclude the board from, in one situation, saying, we're drawing the line here. Help me out here so I don't have a temptation to do that. Why don't you persuade me that doing it three times in a row, getting drunk three times in a row, and driving is really not as bad as doing it once with a suspended license. Why don't you persuade me? Apart from the gut reaction that it's worse, I think the issue would be, how would the agency prove intent? And if, for example, even though the conduct wasn't considered, but in this case, for example, the legal driving limitations. What's wrong with saying, look, you knew, there's no doubt about the fact that you've been convicted of drunk driving. This is not something that you can question, but you went drunk when you walked into the bar, so you knew that. You intended to stop and have a drink. What's so difficult about that? And then you did it a third time after having twice been caught doing this terrible thing that kills people. Well, I can imagine a scenario where the person did not intend to drive drunk, but, for example, miscalculated his blood alcohol level or miscalculated his degree of impairment after having drinks. But how do we know that most of these people that are alcoholics, they don't really have much control over their lives, and staying away from liquor, I mean, it's a big social problem. Well, it is. But they can't help it. So how do you come up with all this intent? You know, in this circuit, bank robbery is not a specific intent crime. Do you know that? Yeah, I didn't know that. Yeah. Walter Ely's decision. In this circuit, it's not even illegal. That's probably a good point. Or maybe everybody wants to go out and do it. People at home will find that very interesting. I think of the example you gave and that given by Judge Kuzinski. You get your picture taken free, too. You do. Well, counsel, maybe the answer is that we don't really have to look at Torres Varela. All we have to say is these two aggravated DUIs taken by themselves are either turpitudinous or not, as the BIA decides, and they can so find it as turpitudinous if it follows Lopez Mesa. End of analysis. You don't look at Torres Varela. Is that a fair way to approach it? I think that's absolutely fair. Isn't it so that there has to be some coherent overall definition and understanding of CIMT that's applied in a particular instance so that if we can read BIA decisions and come up with statements going off in every direction, that there really isn't a coherent CIMT and there's nothing to defer to? In other words, to just look at one individual application is not the answer. The question is, do you have a definition that makes any sense overall? Otherwise, we're not deferring to your definition. You don't have one. And, in fact, one of our cases essentially said that. Well, Your Honor, I think at first I thought you were going to the direction of the congressional intent that there be uniformity in immigration decisions. No, I'm going to basic administrative law, which is that an agency has to have a rational basis for its decision. And if it says one thing in one case and then you take that same sentence and plug it into another case and it comes out the opposite way, then it doesn't have a rational theory. Well, I submit, Your Honor, that many of the de novo review cases play into that. No, but let's forget de novo review. Let's assume we're applying Chevron difference. But still, the standard is that you have to have a rational, reasonable basis for the distinction, for the definition you're adopting. And if the definition is all over the lot, depending on what case you're looking at, then where is the reasonable definition to refer to? Well, as Your Honor knows, the cases come to the board from convictions of widely different statutes from all over the country. And there won't be one standard that applies for a certain kind of conviction in Massachusetts as compared to a different kind of conviction in California. But there have to be general principles that are applied even-handedly as opposed to differently in each individual instance. Well, we submit there hasn't been any difference application. And it's been recognized that the board's definition of crime involving moral interpretation is broad. But that is the very reason that under Chevron and Aguirre-Dure, it is up to the board to see if a particular conviction fits. You know what the overarching principle is today? The king can do no wrong. I think this court has certainly punched holes in that. If we have, we haven't punched as much as we should have. That's what's happening today. The king can do no wrong. Thank you. Thank you. We have gone over the time of the petition. But if you'd like a minute for rebuttal. I just wanted to point out one issue because it seems to have come up again and again throughout the argument. On page 147 of the administrative record, in the city college, with the first conviction in 1997, which relates back to the 1995 DUI incident. He says no license. Well, on 11 through 13, the court and Mr. Campos, that's Marmolejo Campos, did you have a valid driver's license at the time in Arizona? Answer, I've never had one. That's why I pointed that out to you, and I also pointed out to you the inconsistency with the colloquy on page 126. This is what I had asked you to address. And you seem to say, and I'll let you take it back if you'd like. Maybe you don't understand the question fully. Given this ambiguity in the record, what do we presume to be the case? Because if you look at 126, it says, it was determined that he was driving privileges... Let me start over again. This is page 126 of the record, starting at line 15. It was determined that his driving privileges in Arizona were suspended at the time, and pursuant to blood tests of 233, Mr. Campos was charged with aggravated DUI. So this is part of the record that seems to say that he had a license and his privileges were suspended. So I asked you this question, and the answer you gave me, as you recall, was it had to have been a suspension because you cannot get the state conviction for a violation of the statute unless there was a suspension. Merely not having a license wouldn't do it. I did make that assertion earlier on that never having a license is sufficient under the Arizona state statute. I thought you said it is not sufficient. I contradicted myself. I think quite earlier I did say never having a license would be sufficient. Judge Berzahn told me that was incorrect. I believe it is a correct statement of the law. It's my understanding of the Arizona state law that if you've never had a license, you have a single DUI offense, you can be convicted of aggravated DUI. Do you have any case that says that, or is that just your view of Arizona law? I'm going to supplement it. It's my understanding. But I'm from Arizona. I can tell you that's not my understanding of the law. I may be wrong on that. Is the record of conviction of this particular DUI aggravated in the record? Is there a record of conviction with respect to this? I think what I was reading was the transcript of the actual state proceeding. Right. There's the change of plea that starts on 137. That's in the Superior Court of the state of Arizona and in Fort LaTonia. But let me ask the question again because, again, I'm not going to hold it to any answer if you didn't understand. I just would like to know what you – we have a conviction here, right? The 1997 conviction. There's two DUI convictions, 97 and 2002. So you're referring to the 97 conviction. I'm referring to the one that's on 136. I think that's the 97 conviction. 137, yes. April 9th, 1997. Right. So you now take the position that it could be – that conviction could be based on a suspended sentence license or simply an absence of a license. But what we have here in the plea colloquy is an assertion by defense counsel that he was subject to suspended license. And that – It was determined. I don't think it's clear. If I'm wrong on that – I think Judge Berza might be able to help you here. I'm not sure. My understanding is the very next sentence, or next after what Judge Fiske was reading, was Ms. Brooks, who I assume is a defense lawyer, but I don't know that. It's on the face here. No, that's the government. The prosecutor. The prosecutor. Okay. I'm going to add something. I don't know if the defendant's driver's license was restricted either by suspension or revocation and if the defendant knew that it was suspended or revoked. I wondered the same thing, counsel, because it sounded like Jacobs was the prosecutor and Brooks was the defense lawyer. But then I looked at 118 and it says Brooks is the prosecutor and Jacobs is the defense lawyer. Do you know what's true? Your Honor, I don't. I was relying on – I was thinking from Arizona you probably knew these people. It says at the beginning, Laura Brooks on behalf of Jonathan Warshaw. The bottom line is you didn't collaterally attack either of these convictions. Am I correct about that? That's correct. And again, if I'm wrong on that, I'll educate myself in Arizona law. That was my understanding. I'd probably like to do something on that issue on whether or not you ever need to have a lawyer. But ultimately it doesn't matter who made the assertion. The assertion was made that it was a suspended license. All right, Mr. Campos, you heard the facts as provided by your attorney as well as additional information provided by the county attorney. Do you agree with the facts that have been provided in the court? The defendant, which is your client, yes, Your Honor. So whoever said it and whatever capacity they were in, they make an assertion here that says that he has a suspended license. He signs on to it. He says he understood it. Why isn't that binding? Why isn't that established that he is not a guy who doesn't have a license, but he is a guy who has a license that's suspended? Well, as it says on 147, he's never had one. That's why my understanding of the Arizona state law is you never need to have a license in order to be convicted of aggravated DUI. But how do you get around the fact that he signs on to this factual scenario? Why isn't he, as a matter of law, now bound by the concession he made, which is now bound up in the judgment of conviction that was entered against him? I'm not saying he's not bound by it, because certainly the plea was accepted. On page 148, the court says clearly, all right, on the basis of the record the court finds Mr. Campos knowingly, intelligently, and may cite the statute the court finds as a factual basis for the plea, the plea is accepted, entered a record. The court, nobody has a problem with the fact of whether or not he had a suspended license. There was no proof offered. There's confusion, which when I read the record, and what I understood of Arizona state law was consistent, that it didn't matter whether or not he ever had a license. He never had one, and he knew he couldn't drive, and that's a suspicion of the Arizona statute. But I will look at that issue. Okay, thank you, counsel. The case is now submitted. We are adjourned.
judges: Kozinski, Pregerson, O'scannlain, Kleinfeld